**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| JAMES E. METRO and | : | Bankruptcy No. 04-30968DWS |
| DEBORA A. METRO, | : | |
| | : | |
| Debtors. | : | |
| | : | |
| MAIN STREET at EXTON, L.P., | : | Adversary No. 07-0420 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES E. METRO and | : | |
| DEBORA A. METRO, | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, U.S. Bankruptcy Judge**

Before the Court is the Debtors' Motion to Dismiss Adversary Complaint (the "Dismissal Motion") that was filed by Main Street at Exton, L.P. ("Main Street"). For the reasons that follow, the Dismissal Motion is granted but Plaintiff is given leave to file an amended complaint consistent with the Memorandum Opinion that follows.

**PROCEDURAL AND FACTUAL BACKGROUND**

Debtors James and Debora Metro (the "Metros") filed a petition under Chapter 7 on August 12, 2004.[1] Their case was a no-asset case and the Metros received a discharge on December 15, 2004, after which the case was closed. During the pendency of their case, the Metros filed a motion to compel the Chapter 7 Trustee to abandon the Metros' stock interest in a wholly-owned corporation, White Clay Enterprises, LLC ("White Clay"), which operated two bakeries in West Chester, Pennsylvania. Doc. No. 12. The motion was unopposed and granted. It is from this bakery business that the instant adversary proceeding and Dismissal Motion arise.

On November 12, 2007, Main Street filed a Motion to Reopen Chapter 7 Case for the Filing of an Adversary Proceeding to Obtain a Declaratory Judgment as to Dischargeability (the "Reopen Motion"). At the hearing it was revealed that Main Street had obtained default judgments in state court against the Metros and White Clay. However, when the Metros' counsel asserted that the discharge injunction of § 524(a) was applicable, Main Street withdrew the judgments against the Metros.[2] While Main Street asserts that it is pursuing only post-petition claims against the Metros, it filed the Reopen Motion given the Metros' expressed position on the scope of the discharge injunction. As the Reopen Motion did not attach the proposed Complaint that Main Street intended to file and because it was still not

---

[1] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

[2] The parties reported that the judgment against White Clay remains in place.

-2-

clear to me following the hearing exactly what claims it sought to assert, I decided that the better course would be to open the case and allow the Complaint to be filed. It was, and the instant adversary proceeding followed.

According to the allegations of the Complaint, Main Street leased certain non-residential real estate (the "Premises") to White Clay starting on or about June 29, 2000. The Metros were co-lessees on the Lease. Compl. ¶¶ 6-7 and Exhibit A attached thereto.[3] The Complaint further alleges that the Metros and White Clay operated a bakery on the Premises from 2000 until mid-October 2007. At that point, they ceased bakery operations and vacated the Premises without notice to Main Street, failing to make the October 2007 rental payment and having other post-petition delinquencies under the Lease as alleged. Compl. ¶¶ 9-14.[4]

---

[3] The Complaint asserts that Main Street is the Lessor. Compl. ¶ 6. However, the attached Lease indicates that the lessor is Wolfson-Verrichia Group, Inc. It appears from Main Street's response to the Dismissal Motion that it was assigned the Lease. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Adversary Complaint ("Pl.'s Mem.") at 1 n.1.

[4] The Complaint alleges:

> At the time the Lessees ceased operations, amounts due under the Lease (all accruing post-petition) were delinquent as follows:
>
> | | |
> |---|---|
> | Rent in Arrears: | $ 1,177.79 |
> | Oct. 2007 Rent: | $ 7,945.25 |
> | Late Charge: | $ 397.26 |
> | Unpaid Sewer Charges: | $ 1,178.10 |
> | Attorneys' Fees: | $10,000.00 |
> | TOTAL | $20,698.40 |

Compl. ¶ 14. In addition, the Complaint alleges that White Clay remains liable under the terms of the Lease for rent and other charges through the end of its term, December 2012, in an amount in excess of $525,000.00. Compl. ¶ 15. White Clay is not a named defendant in this adversary proceeding, presumably because Main Street has obtained a default judgment against that entity.

Main Street is pursuing a claim against the Metros for post-discharge damages under two legal theories: *quantum meruit*, i.e., that the Metros received an unjust enrichment through their continued occupancy of the Premises after the bankruptcy (Count I) and/or *de facto* assumption/ratification of the Lease by reason of their continued possession post-rejection (Count II). Main Street joins a demand for a money judgment to its request for declaratory relief.

**DISCUSSION**

A.

Except as provided by § 523 of the Bankruptcy Code, a discharge in a chapter 7 case discharges a debtor from all debts that arose prior to the date of the order for relief. See 11 U.S.C. § 727(b). The discharge acts as a statutory injunction against attempts to collect the discharged debt. 11 U.S.C. § 524(a). "Debt" is defined by the Bankruptcy Code as "liability on a claim." 11 U.S.C. § 101(12). "Claim" is in turn defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). A debt, in other words, is liability on a right to payment. While the Bankruptcy Code does not specify when a "right to payment" arises for bankruptcy purposes, the Third Circuit Court of Appeals has held that a debt, arises for bankruptcy purposes when the cause of action underlying it accrues under applicable state law.

Avellino & Bienes v. M. Frenville Co., Inc. (Matter of M. Frenville Company, Inc.), 744 F.2d 332, 335-36 (3d Cir.1984).[5]  Thus, a right to payment that arises post-petition is not discharged and therefore collection of that debt is not subject to the discharge injunction.

The state courts have concurrent jurisdiction with this court over issues regarding the scope of a debtor's discharge and the enforcement of the discharge injunction.  See In re Antonious, 373 B.R. 400, 406-07 (Bankr. E.D. Pa. 2007) (denying motion to reopen bankruptcy case and noting that enforcement of discharge obligation can be obtained in state court system); Mintz v. Carlton House Partners, Ltd., 595 A.2d 1240 (Pa. Super. 1991) (state court adjudicating whether cause of action accrued pre- or post-petition so as to be discharged).  See also In re Brown, 211 B.R. 183, 189 (Bankr. E.D. Pa. 1997), rev'd on other grounds, 1997 WL 786994 (E.D. Pa. 1997) ("while state courts may have concurrent jurisdiction . . . regarding the scope of [debtor's] discharge . . . this bankruptcy court is a viable alterative).  While it is my preference in many cases to defer to the state court over matters that implicate non-bankruptcy law, the parties have urged this Court to address the merits of their dispute.  I agree that in the interests of judicial economy, especially given the relevance of the rather complicated issue of the treatment of leases in bankruptcy, this adversary proceeding is appropriately before me.

The Dismissal Motion does not address dischargeability *per se* but rather addresses the merits of the Complaint, arguing that (1) it fails to support a claim in *quantum meruit* and (2) implicit or *de facto* lease assumptions are not permissible under 11 U.S.C. § 365(a).

---

[5] While Frenville has received much criticism outside of this circuit, there is no question that "it remains the law of this circuit." Jones v. Chemetron Corporation, 212 F.3d 199, 205-06 (3d Cir. 2000).

As such, the Metros contend that the Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), incorporated into adversary proceedings pursuant to Fed.R.Bank.P. 7012. At the hearing on the Dismissal Motion, counsel for both parties appeared to view the substantive merits of Main Street's claims as inextricably intertwined with the issue of dischargeability, i.e., a finding with respect to dischargeability is dependent upon determining that Main Street first has a valid cause of action, and then determining when it accrued, i.e., pre- or post-petition. See Frenville, 744 F.2d at 335-36.

B.

In considering a motion to dismiss "for failure of a pleading to state a claim upon which relief may be granted," Fed.R.Civ.P. 12(b)(6), a court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). The Court of Appeals for the Third Circuit further instructs that "'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element [of the cause of action]' . . . This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' "the necessary element [of a cause of action]." Id. at 234 (quoting Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1969 (2007)).[6]

---

[6] See also Haspel v. State Farm Mut. Auto. Ins. Co., 241 Fed.Appx. 837, 838 (3d Cir. 2007) (a motion to dismiss merely inquires whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." (quoting Twombly (internal quotes omitted))).

Count I of the Complaint is based upon the Pennsylvania doctrine of *quantum meruit*. "*Quantum meruit* is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment; the contract is one that is implied in law, and 'not an actual contract at all.'" Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000) (citation omitted). Because the contract is necessarily implied in law, the Metros are correct that "a claim for *quantum meruit* is 'inapplicable when the relationship between the parties is founded on a written agreement or express contract.'" Promark Realty Group, Inc. v. B&W Associates, 2002 WL 862566, at *4 (E.D. Pa. 2002) (*quoting* Benefit Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174, 1177 (3d Cir. 1985) (internal quotation omitted)).

Here the parties' relationship is governed by a written contract: the Lease. Both agree that the Chapter 7 trustee failed to assume the Lease within sixty days following the filing of the Metros' bankruptcy petition and that, pursuant to 11 U.S.C. § 365(d)(4), the Lease was "deemed rejected."[7] Memorandum of Law of the Debtors in Support of Motion to Dismiss Plaintiff's Complaint ("Metro Brief") at 11; Pl.'s Mem. at 3. The parties also agree that the consequence of rejection is that the Lease is deemed to have been breached immediately

---

[7] Section 365(d)(4) has been modified and renumbered by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 ("BAPCPA"). However, the parties agree that the pre-BAPCPA version governs and states as follows:

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

Id. (emphasis added).

before the bankruptcy petition but not in any way terminated. See 11 U.S.C. § 365(g).

Indeed, Main Street quotes from a prior decision of this Court:

> Rejection's effect is to give rise to a remedy in the non-debtor party for breach of the rejected contract, typically a right to money damages assertable as a general unsecured claim in the bankruptcy case. Rejection has absolutely no effect upon the contract's existence; the contract is not cancelled, repudiated, rescinded, or in any fashion terminated.

Pl.'s Mem. at 4 (*quoting* In re Bacon, 212 B.R. 66, 69-70 (Bankr. E.D. Pa. 1997) (citation omitted)); accord Metro Brief at 11-12 (*citing,* inter alia, Bacon). As there is an existing contract governing the parties relationship with respect to the Premises, Main Street's *quantum meruit* theory fails as a matter of law. Count I of the Complaint shall be dismissed.

Count II alleges an alternative theory that the Metros either "effectively ratified, or *de facto* assumed the Lease." Compl. ¶ 21. The Dismissal Motion addresses only the assumption prong of this theory. The Metros argue that no assumption could take place without approval of the bankruptcy court. See § 365(a) ("...the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor") (emphasis added).

In response, Main Street disputes the Metros' contention that court approval would have been necessary to effect an assumption. It argues that there can be no *de facto* assumption of the Lease by the Debtors because only the Chapter 7 trustee is entitled to assume or reject an unexpired lease. Thus, in this context, court approval is an irrelevancy because assumption by the debtor is not contemplated by the Code. Section 365(a) explicitly gives the power to assume or reject a lease to the trustee, not the debtor. "In the reorganization chapters of the code, a debtor is specifically given the authority to assume an

-8-

executory contract or unexpired lease. 11 U.S.C. [Section] 1322; 11 U.S.C. [Section] 1107. There is no corresponding provision in the code for a chapter 7 debtor." In re Gatea, 227 B.R. 695, 697 (Bankr. S.D. Ind. 1997) (alteration in original).[8] As it is the chapter 7 trustee who administers the estate, there is no purpose in allowing a chapter 7 debtor to assume a lease because, as Main Street notes, rejection by the chapter 7 trustee "effect[s] an abandonment back to the debtors of their rights in the lease." Pl.'s Mem. at 5 (*quoting* In re Werbinski, 271 B.R. 514, 517 (Bankr. E.D. Mich. 2001) (rejecting that chapter 7 debtor could effect a *de facto* assumption of lease, *citing* Gatea)). Thus, by its own admission, Main Street has acknowledged that the Lease was not *de facto* assumed, thereby rejecting its own theory of liability.

The Metro Brief does not discuss the alternative allegation of Count II of the Complaint, that the Metros ratified the Lease through their continued occupancy and use of the Premises post-discharge so as to be bound by its terms. It is not clear whether "ratification" was intended to be a theory distinct from *de facto* assumption since Main Street also did not address it in its Memorandum.[9] Rather it appears that Main Street abandoned

---

[8] I note that the authority cited by the Metros for the necessity of court approval all involve either chapter 11 debtors-in-possession or chapter 7 trustees. See In re Harris Management Co., 791 F.2d 1412, 1414 (9th Cir. 1986) (discussing assumption by chapter 7 trustee); In re Gamma Fishing Co., 70 B.R. 949, 951 (Bankr. S.D. Cal. 1987) (assumption by chapter 11 debtor-in-possession); In re Hodgson, 54 B.R. 688, 690 (Bankr. W.D. Wis. 1985); In re Kelly Lyn Franchise Co., 26 B.R. 441, 445 (Bankr. M.D. Tenn. 1983) (chapter 11 debtor-in-possession).

[9] In any event, ratification only arises where the contract is voidable on some basis such as duress or fraud. See U.S. v. Baird, 218 F.3d 221, 230-31 (3d Cir. 2000) ( If contract is voidable, party who has the power of avoidance may extinguish that power by ratification of the contract); Levin v. Garfinkle, 492 F.Supp. 781, 807 (E.D. Pa. 1980) (A contract induced by fraud is not void, but only voidable... and may be ratified by the parties") (citations omitted); Sams v. Sams 808 A.2d
(continued...)

both theories and the premise of its Complaint, i.e., the need to find some legal basis other than the parties' original contract to hold the Metros liable for post-discharge obligations under the Lease. Instead Main Street now relies on Werblinski for the proposition that after rejection, the Lease reverted back to the Debtors and their post-rejection occupancy created liabilities that survived the discharge.[10] Thus I find no basis for the Complaint to go forward on Count II as pled as it is totally inconsistent with the legal argument made in Main Street's Memorandum.

Since I find that both parties now agree that the Lease is an extant contract between the Metros and Main Street,[11] I cannot rule out the possibility that there are Lease obligations that have arisen during the Metros post-rejection occupancy that have not been discharged. See Werbinski, 271 B.R. at 517 ("because the Werbinskis' remained on the premises after the lease was rejected, [lessor] was free to collect rent . . . from that point forward"). If a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is granted, then ordinarily the plaintiff should be provided an opportunity to amend the complaint if it appears that the deficiencies

---

(...continued)
206, 212 (Pa. Super. 2002) ("Ratification," in context of contract law, results if party who executed contract under duress accepts benefits flowing from it, or remains silent, or acquiesces in contract for any considerable length of time after party has opportunity to annul or avoid contract"). There is no such allegation that would support ratification in this case.

[10] Perhaps this change of position is attributable to the different scriveners of the Complaint and Memorandum, only the latter being a bankruptcy attorney.

[11] Aside from Main Street's total change of its theory to support post-discharge obligations under the Lease, the Metros, in arguing against the application of *quantum meruit*, also acknowledge that the Lease agreement has not been terminated and thus contractual obligation may still exist. Metro Brief at 12.

can be corrected by amendment. See 2A J. Moore, Moore's Federal Practice ¶12.07[2.-5], p.12-99 (2d ed. 1994); see also Fed.R.Civ.P. 15(a). While it would appear that the parties could figure out what these post-petition obligations are,[12] if a trial is necessary to determine which of the Paragraph 14 claims are recoverable, it must be premised on a complaint that puts the Metros on notice of the basis of its claim that the obligations are non-dischargeable. I will allow Main Street to file an amended complaint to do so and after the Metros answer and a brief period for discovery is extended, I will schedule a trial at which I will determine which of the asserted obligations have not been discharged and presumably put this matter to rest.[13]

---

[12] For example, the unpaid October 2007 rent payment would appear to be a post-petition obligation.

[13] As stated by the Court in In re Sieger, 200 B.R. 636, 639 (Bankr. N.D. Ind. 1996):

These practical realities reveal that, although the essential purpose of dischargeability litigation is to obtain declaratory relief, it is not always possible or appropriate for the bankruptcy court to answer the ultimate question before it with a simple yes or no. Unless it is represented by a prior judgment, issues concerning the validity and the amount of a debt "are inextricably interwoven with the issue of dischargeability ..." In re Hallahan, 113 B.R. 975, 982 (C.D. Ill. 1990), aff'd, Matter of Hallahan, 936 F.2d 1496 (7th Cir. 1991). "[I]t is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt." In re Devitt, 126 B.R. 212, 215 (Bankr. D. Md. 1991). As a result, the bankruptcy court may properly determine not only the dischargeability of a particular debt but may also enter an appropriate money judgment. Hallahan, 936 F.2d at 1508. This gives dischargeability proceedings a "dual nature." In re Hooper, 112 B.R. 1009, 1012 (9th Cir. BAP 1990). This duality should not, however, obscure the fact that "the ultimate relief sought is a determination that, as to a particular debt, the creditor is not bound by the injunctive effects of a discharge under section 524(a)." Id. Once this determination has been made and judgment entered, the bankruptcy purpose for the proceeding has come to an end.

Main Street at Exton, L.P. vs. James E. & Debora A. Metro - Adversary No. 07-0420

An order consistent with this Memorandum Opinion shall be entered.

                        DIANE WEISS SIGMUND
                        U.S. Bankruptcy Judge

Dated:  April 7, 2008

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| JAMES E. METRO and | : | Bankruptcy No. 04-30968DWS |
| DEBORA A. METRO, | : | |
| | : | |
| Debtors. | : | |
| | : | |
| MAIN STREET at EXTON, L.P., | : | Adversary No. 07-0420 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES E. METRO and | : | |
| DEBORA A. METRO, | : | |
| | : | |
| Defendants. | : | |

# ORDER

**AND NOW**, this 7th day of April, 2008, upon consideration of the Debtors' Motion to Dismiss Adversary Complaint (the "Dismissal Motion"), and after notice and hearing, and for the reasons set forth in the accompanying Opinion; it is hereby **ORDERED** that:

1. The Dismissal Motion is **GRANTED.**

2. Plaintiff is given leave to file by **April 17, 2008** an amended complaint consistent with the foregoing Memorandum Opinion.  Defendants shall file their response by **April 28, 2008.**

DIANE WEISS SIGMUND
U.S. Bankruptcy Judge